Thank you. Chief Judge Wilkinson, your honors. May it please the court. My name is Denise Hall Scarberry and I represent the petitioner Rhino Energy, LLC. Petitioner requests 15 minutes and reserves 5 minutes for rebuttal. Petitioner Rhino Energy, LLC respectfully asks that this court vacate and reverse the decision of the Benefits Review Board and the Administrative Law Judge. For two reasons. First, the Board erred in finding that the Administrative Law Judge did not err when she found Rhino Energy as the appropriate responsible operator for this claim. This was for two reasons. Because the last employer of Mr. Rule, Wildcat Energy, was a successor operator of Rhino Energy and, as a result, met the requirements of a potentially liable operator. Two, because Wildcat independently employed Mr. Rule for the requisite period of one year as that term is defined and delineated within the Black Lung Benefits Act. Again, qualifying Wildcat as a potentially liable operator. Excuse me, you've heard a discussion in the Baldwin case. Does that, if we, let's just say, assuming arguendo, that we voted to vacate and revand and to calculate in accordance with Shepard. What if, should we do the same thing? Should we, in this case, should we, if we took that view, if we were to take that view in Baldwin, should we revand this case in light of Baldwin? Or does your case have an issue that is totally independent of the Baldwin, what we do in the Baldwin decision? Yes, Your Honor. Actually, my case does have an issue that is independent of the issue in the Baldwin case. That is the successor operator issue. Here, even if you decide not to rule as Shepard has and find the 125-day rule, then there was still a subsequent employer that had one year of coal mine employment. That's because Wildcat was a successor operator of Rhino Energy, meaning that they took over the exact same mine site that Rhino had operated, acquiring the assets thereof and mining at the same mine site, utilizing the same equipment, employing the same coworkers. You're saying that that question of the successor operator swings free and clear of the discussion on the interim presumption and the calculation thereof. Yes, Your Honor, that's correct. It swings free and clear because the time that the miner spent employed by Rhino and the time spent employed by Wildcat is aggregated together. When you do so, the miner clearly worked for one year or more. He worked from 2012 through 2014 for Rhino. If you add in the time that he spent at Wildcat in 2015, clearly that's more than one calendar year and more than 125 days. With this kind of determination, I'm just sort of posing the question. Assuming that we agree with you that this is an independent question, what kind of deference do we owe the director some? We were a little bit hard on the director in the previous case, but still the question is whether the director is due some deference on a question like this. Because the director decides these issues regularly and has an expertise in it. The director has the best chance of applying uniformity here. Deferring to the director does have the advantage, it seems to me, of sparing this court from a slew of appeals. One of the problems with these black lung cases is that they drag on and on and on. The beneficiaries just have to wait. Sometimes it seems to be interminably before they are able to decide whether they get the benefits that are due them under the act. According to the director, some deference here due to the director's expertise and due to the director's opportunity to apply a uniform standard. Then there's the additional advantage that the litigation process or the adjudicative process, which drags on and on in these black lung cases, can be resolved at an earlier point in time and the binders receive the benefits that they're due. I'm just asking you, isn't there an argument at least to be made that some deference is due on the question of whether someone is or is not a potentially liable employer? You're honored to answer your question. As you are aware, the Chevron case previously held that the agency who developed the regulations should have deference, but that case was recently overturned with the Lothar Brock Enterprises v. Raimondo case, which says that all relevant questions of law should be decided and it's at issue for the judicial courts to interpret the law. It's still open to us to apply Skidmore deference and find the director's opinion persuasive. What's unpersuasive about the director's opinion here? Even if we assume that the director is due deference in this case, we don't get to that issue of applying deference because we have plain text here that has plain meaning. We have to give meaning to the plain text. The law itself is clear. The regulation is clear. It specifically says that a year is one calendar year with 125 working days. Then there are four subsections of 725.101A32, which specifically delineate and offer guidance as to how to determine the 125 days or the one year of employment. Based on that, we do not get to the issue of deference because the law is clear in and of itself. There's no need to defer to the director for deference. The 101A32 specifically allows subsection 3, which says that even when there is not a calendar year of coal mine employment with a particular employer, you can still establish one year by dividing the miner's yearly earnings by the daily average earnings, which is referred to as Exhibit 610 of the Black Lung Benefits Act Procedure Manual. Is there a dispute about the 125 days and whether the miner worked 125 days during the year? No, Your Honor. This miner worked 125 days for Wildcat Energy. He worked from January through October, which was less than one calendar year, but obviously just shy of one calendar year. We don't have exact dates of employment. We don't know what day he specifically started and what day he specifically ended. Subsection 3 tells us that when we don't have exact dates of employment, we can use the Exhibit 610, the miner's Social Security earnings record, and divide the yearly earnings for that particular year by the daily average earnings. When we do that in this case, the miner had earned approximately $77,000 during his employment with Wildcat Energy. For the year 2015, the daily average earnings was $244.72. If you divide that out, that equals 318.16 days. Clearly, Mr. Rule's earnings and testimony also established more than 125 working days with Wildcat Energy. Therefore, Wildcat Energy should have been named as the responsible operator in this particular claim. I'm sorry, Judge Floyd. Go ahead. All right. Thank you. If we were to adopt Shepard, would it shift the liability from Rhino Energy to the trust fund rather than Wildcat? It would, Your Honor. Yes, Your Honor. It would shift the liability to the trust fund. That's because the district director essentially gets one bite at the apple to name the appropriate responsible operator. Here, the district director chose to shortcut the analysis and simply rely upon the Armco case and the prior holding and not actually go through a step-by-step analysis. To arrive at a designation of a responsible operator requires reviewing six different regulations. You can't just rely upon one regulation. You have to go through all six. Ultimately, the issue here in this case is whether or not 125 days would meet the one-year definition. As we've established, and it's not a contest, there is 125 days. Therefore, liability would be shifted to the Black Flung Disability Trust Fund. Is it accurate that the director is not permitted to correct the responsible operator designation at the hearing level? That's correct, Your Honor. The director is not permitted to correct the designation of the responsible operator. Again, they basically get one bite at the apple. How does that play in this case? They named Rhino Energy, which is who I represent, Your Honor, when they should have named Wildcat Energy. The Social Security earnings record clearly demonstrated that the minor had subsequent employment with Wildcat Energy. That employment lasted more than 125 days. Therefore, they should have named Wildcat as the responsible operator, Your Honor. If we were to agree with you about the Sixth Circuit, do our instructions include such a designation that Wildcat is responsible on remand? Yes, Your Honor. You could reverse the decision and find that there's 125 days. Therefore, that finding is not contested. Therefore, they should have been named as the responsible operator. You could also remand for further instruction to determine whether or not all conditions of a potentially liable operator have been met. The employer contends, obviously, that they have been. There's another issue in this case as to whether or not there's an ability to pay by the subsequent operator. However, the employer contends that that is satisfied because there's a presumption within the regulations which specifically establishes that when the district director fails to include a statement that the company is not insured or not able to pay their liability, then it is presumed that they are, in fact, capable of assuming liability for the claim. If I could just ask you about that, because it seems to me the difference between Baldwin and this is, the first question is, do we apply Shepard? If we were to apply Shepard, that first part you would prevail on. This next question, though, is the issue of financial solvency for Wildcat. And my reading of the ALJ's opinion was there was no mention of that. Now, there's a fight back and forth between you and the director about who has the burden, but it doesn't really matter because the ALJ didn't flesh it out. So it seemed to me that should we not go back to the ALJ and flesh out the issue about financial solvency? And then the third part of it, you mentioned briefly in your opening remarks about successor liability, I think the director is saying they admit that the error there was just harmless. Why don't we just send it all back to the ALJ, tell them to apply Shepard, figure out if the miner had the 125 days, and then do their job on the second and third questions, which is, is Wildcat financially solvent or not? I believe one of the briefs, it might have been the director had a footnote saying that they're now bankrupt. I don't know if that's true or not because it's not in the record. But why don't we have the ALJ flesh that out, and then they could also fix the error about successor, and then we can figure out how appropriate record to answer all these questions. Otherwise, why don't we let the ALJ do their job once we decide what the appropriate legal standard is? Do you agree with that? Your Honor, we absolutely could send this case back and let the administrative law judge make further findings. However, I think based on the record that we have before us, the district director did not comply with their duty under the regulations. They are required to explain their findings in their proposed decision and order in their schedule wherein they designate a responsible operator. Here, the district director only offered up an explanation saying that the miner had worked briefly for Wildcat Energy in 2015. No other explanation was offered. There was no explanation indicating that there was no inability to pay. The employer, Rhino Energy, is just simply a coal company. They don't have the ability to know whether or not Wildcat Energy has insurance or doesn't have insurance or whether or not they're bankrupt. That's not something that they would keep up with, Your Honor, but the district director does have that ability. If they were determining that Wildcat was not capable of paying, then they should have explained that. They did not. They chose not to. They transferred this case to the Office of Administrative Law Judge without any such statement indicating that they were incapable of paying. The regulations specifically tell us in 20 CFR 725.495D that when there is no such statement included in the record, then it is presumed that the company was capable of paying benefits. As such, we can presume that Wildcat Energy was capable of paying benefits. But don't we need a predicate finding under Shepard with respect to Wildcat? I mean, basically isn't the question that we need to know more? Your alternative to Rhino is Wildcat. Don't we need to know more about Wildcat? We have so little information about Wildcat. And don't we need to know two things? Number one, did he work for 125 days? And then number two is what the financial solvency and what financial status is. We have two things that might be useful to learn about Wildcat. What's wrong with finding a little bit more about Wildcat? Judge, I see my time has ended and I would like to respond to your question if that's okay. Yeah, if you could do it briefly because we've given you some extra time already. Yes, Your Honor, I'll be absolutely brief. To answer your question, Judge, at this point in time it's too late to find out information about Wildcat Energy. The fact of the matter is that information should have been included. The director had the ability to include that information and they did not, which would have led to a further investigative process by my client, Your Honor. But they did not include the information or give us the tools or explanation needed to adequately do our jobs, Your Honor. The director decided here that he did not, I think that Wildcat hadn't employed the miner for a year. Is that still true after Baldwin? Again, with permission to answer your question, Your Honor, I'll be brief. They found that he was not employed by the employer for one calendar year, not 125 days. The record is clear. There absolutely was 125 days of employment based on the miner's very own testimony himself, as well as the Social Security earnings record and the exhibit. I'm still troubled by the fact that Wildcat seems to me something of a mystery employer. I mean, you set up a case as to whether Rhino or Wildcat is the potential operator and everything, and yet there's so much about Wildcat that we really don't know. And maybe that's why, you know, I don't know whose fault it is. Maybe Wildcat has the responsibility there. Well, let's hear from Mr. Austin here. And then you have some time for rebuttal, Ms. Scarberry. So we'll come back to you, okay? Thank you, Your Honor. Mr. Austin, you're on mute yourself, and let's hear from you, sir. Can you hear me now, Judge Wilkinson? We can hear you fine. All right, great. It's always an honor to be before this court. I've appeared before this court several times before you, Judge Wilkinson. May it please the court. I have to say, however, this is my first time appearing before this court and agreeing with an employer's counsel. But I do. I agree with Ms. Scarberry. I think this issue regarding your, as you heard from my colleague, Mr. Blair, in the last case, is a very important issue for many purposes, as this court can obviously tell from all these arguments today. Judge Wilkinson, I had a lot to say about this, but I think the court's heard quite a bit of the arguments pertaining to A32 and all the definition. But I want to ask the court to consider one thing that you just addressed with Ms. Scarberry. The director does not get multiple opportunities to name the correct RO. And the reason that that's important here is because the director relied on an incorrect interpretation of the statute regarding your, to find that Rhino Energy was the RO. So I do not want this court to remand this case back to the ALJ for further findings. I want this court to reverse the issue regarding responsible operator. And there's a clear reason for that. Because if this court applies the Shepard standard like Judge Novak has been saying, which I agree wholeheartedly with Judge Novak's analysis, if you apply the proper Shepard standard in this case, it is clear from the facts that there was 125 working days with a subsequent employer. So applying that standard to the facts of this case, Rhino was improperly named from the very beginning. As you said, Judge Wilkinson, my client has waited years for finality in this case. And remanding the case back to the ALJ to make those additional findings is unnecessary. It is a second bite at the apple, which the director does not have the right to do. That evidence should have been developed at the district director level. It was not. There is no dispute at this point in time that Mr. Rule is entitled to benefits. He's proven every element of entitlement. And in fact, Rhino Energy does not contest entitlement. They only contest liability. And I assume the director does not contest entitlement given that, you know, it's previously made that finding. So I don't ask this court to remand. I ask this court to reverse. And I think this court should absolutely apply the Shepard standard because words do matter. If you look at A32, it says, quote, for all purposes under the act. And Judge Novak, you've outlined that, you know, ad nauseum today. I mean, you hit the nail right on the head. Well, I've always made it ad nauseum. I mean, that's consistent with my personality. But let me ask you this. I'm concerned, though, about the direct reversal. I mean, I'm sympathetic to the fact that minors don't get these benefits sometimes after they're dead, like in the Baldwin case, right? Yes, Your Honor. But in this case, it seems to me that there really is a three-step process. And the second is the financial solvency. And I think the director brought up the fact that that needs to be addressed, that they could still have an affirmance in certain circumstances. I'm not sure I agree with that. But the record is so devoid. In fact, I don't see anything in the ALJ's finding about financial solvency. Why don't we just send it back and let them address that quickly and fix the third issue, which is the successor issue? Now, I think it was the director that said in their briefs that Wildcat is insolvent. I mean, maybe that's true. I don't know if it's true. It's not in the record. It was just a fleeting reference in a brief. But I think we need to figure that out and get it right. And I say with all due sympathy to your client, why don't we just send it back and let them just address it? If they're bankrupt, they're bankrupt. If they're not bankrupt, they're not. And we can kind of go from there. Judge Novak, I respect that position, and I understand where you're coming from with it. But I guess my question, I'm not trying to ask the court a question, but what real difference would that make in this case? Because if this court applies Shepard, the only finding would be that Rhino is improperly named from the very beginning. In either way, the case is a trust fund case because of that improper application of the regulation. So I don't disagree with what you're saying, but I want the court to consider the practical aspect of what's actually going to happen here. If the court remands this case with Shepard-like instructions, and I do see that my time is almost out. Could I have just a moment, Judge Wilkinson, to conclude?  If this court, which it should adopt the Sixth Circuit's Shepard standard, if this court does that, that's exactly what's going to happen. It's going to become a trust fund case. So I just encourage this court to consider that. I respect your position, Judge Novak, and I understand why you would make that. But for all practicality, it's going to end in the same result. And if I could just, I wanted to touch on this, Judge Wilkinson, I know I'm out of time. Could I make one brief point about precedent within this court? Yeah, sure. Judge, I was just going to say the Armco and the Daniels v. Mitchell decisions did, you know, they came out in the years 2002 and 2007. But, Judge Novak, you hit the nail on the head. At best, that's dicta. They did not apply any kind of clear interpretation of the current regulation. Because that current regulation was not in place at the time those two decisions were issued. So I know my friend on the other side, Mr. Doyle, will argue that those two cases have precedential value before this court. But I argue they do not. They do not have precedential value before this court. And the Sister Circuit, the Sixth Circuit, deals with a lot of federal black loan cases. They have squarely addressed this issue. We think that logic is sound. It's in line with the remedial nature of the act. And it applies to regulation. Thank you, Judge Wilkinson. Thank you, Mr. Austin. We appreciate it. Mr. Doyle, let's hear from you. Yes, Your Honor. Thank you, and may it please the Court. I do want to clear a few things up and points that I agree with opposing counsel about. Your Honor, Judge Wilkinson, as to Wildcat, I think the parties are in agreement that Mr. Rule had 125 working days with Wildcat, and also that the dates of employment were January 1, 2015, through October 30, 2015, which was less than a calendar year. So that's all we really need to know about Wildcat to resolve this case. I will also say that Mr. Austin's client is going to get paid one way or the other. Nobody disputes entitlement. It's only about liability. Is this going to be RINO paying this, or is it going to be the trust fund paying it? Well, Wildcat will not be paying it in any case, because if it's determined that RINO was incorrectly named, then it will be the trust fund paying, not Wildcat. Now, I did want to, Judge Wilkinson brought up the notion of deference, which I don't think we talked about during Baldwin, but I did want to suggest to you that Kaiser v. Wilkie from the Supreme Court is still good law. It was not overturned by loop or bright. And so the deference that we are claiming here is not a Skidmore or lesser type of deference. It's our or Seminole Rock controlling deference that if you find ambiguity in this regulation, then you should defer to our reasonable interpretation based upon our consistent approach to this regulation and the reasonableness of the interpretation. The reasonableness of it is grounded in the fact that the AMCO court basically construed the very same language the same way that we are asking you to construe it today. So, you know, Mr. Austin talked about whether AMCO is a precedent. I'm not suggesting it's a controlling precedent. I'm not saying that only an en banc court, for example, can over, that you would be overturning AMCO. I understand it was dealing with a different, with the prior regulation. Answer briefly is between Rhino and Wildcat. Why did you latch on to Rhino as the liable employer, as between those two? For the sole reason that Wildcat did not employ Mr. Rule for a full calendar year. So, Mr. Doar, let me ask you this then. Do you agree with Mr. Austin if we were to apply Shepard? And I know you're in stark disagreement with that. But if we were to apply Shepard, do you believe it should just be remanded in order that it's the trust fund? And I thought I was following your brief, to be candid with you, about the question of financial solvency.  And to your credit, you admitted there was error about the successor liability. You just said it was harmless. Do you agree with Mr. Austin then if we were to apply Shepard that there's no need to remand it? Or do you think that there has to be a remand to allow the ALJ to address financial solvency? I don't think there should be a remand. But I do think that the case should be resolved against Rhino on the financial solvency issue. Because the board did rule on that. The board did. The problem, Judge Novak, if you send it back to the ALJ, the ALJ doesn't have any evidence whatsoever about Wildcat's financial solvency. And no party at this point can produce that, is permitted under the regulations, to give that evidence to the ALJ. So the ALJ can't make a finding of fact about the financial solvency, except to say that Rhino did not prove that Wildcat had the financial resources. So this is really a legal issue about who had the burden of proof. It's our position, the director's position, that Rhino had the burden of proof before the ALJ. Ms. Starbury's position is that it was our burden because the district director did not include a certificate or a statement within the record as to. You're saying that Rhino bears the burden to shift the liability and that Rhino had the burden to establish Wildcat's financial status? That's correct. At the time that the case went to the ALJ, the director's burden was to show that Rhino, not Wildcat, but Rhino was a potentially liable operator. Rhino admits that it is a potentially liable operator. Under the regulations, the burden then shifts, and this is very clear from the regulations, Your Honor, the burden shifts to Rhino to prove that Wildcat or any other potentially liable operator had, among other things, the financial resources to pay the claim. You're saying that it was clear that Rhino was a potentially liable operator? Yes, and they admit as such and they admit as such in their appellate brief. Then you're saying once it's established that a company is a potentially liable operator, if it wants to bring another operator into the picture, the way it should do that is by establishing the criteria, including financial status and financial solvency, and you're saying that in shifting where you have met your burden in clearly establishing someone's status as a potentially liable operator, the burden then shifts if that one you've established wants to finger another operator and say no, it's their responsibility. You're saying you have to say why. You have to say why, and you're saying that that isn't what they've done now. Does this, in your view, swing free and clear of the result that we might reach under Shepard and under Baldwin? Yes, Your Honor. If you find that the – if you uphold the board's finding with respect to the financial solvency, that would end the case. It would require an affirmance of the board order free and clear of the one-year issue. And the one-year issue is not in the case, is it? I mean, it's been – It's in the case to the extent that, yes, we – I mean, we've talked at length in the Baldwin case, but, you know, here Wildcat – But it's clear that Rhino has both the ability to pay and that it has employed the minor for at least a year and that the minor worked at least 125 days for that year. Right. There's no question as to Rhino being – meeting the one-year requirement. The question is about a Wildcat. Those three criteria have been established that Rhino has the potential – has the financial ability to pay the benefits. It's also clear that Rhino has employed the minor for a year. It's also clear that the minor worked at least 125 days during that year. So, Rhino's status is established. And once Rhino is established, then Rhino has a burden which, in your view, they fail to meet. And just affirming the director on this point would have the benefit, I guess, of allowing the minor, in this case, to know that benefits were due him and that Rhino would pay them. So, it would facilitate, more so than a remand, a definite resolution of this case so that this minor will get his benefits from Rhino. I think that's correct. I think my understanding is that the minor is getting the benefits from the trust fund during this whole process. Mr. Auster could correct me if I'm wrong. I know that it's going to get paid and it's going to come from the trust fund. But you don't want to be in a position of just rating the trust fund willy-nilly.  In other words, I'm hesitant to say, oh, well, this can go to the trust fund, this can go to the trust fund. Because the very reason for the trust fund is if there's no potentially liable operator. It is if you don't have anybody else that can pay it. The trust fund is a back-up. But I don't know that you don't necessarily need the trust fund if you can establish the criteria that Rhino has for being a potentially liable operator. And Rhino has not carried its burden that then comes in to shift responsibility to another party. And I gather that's the path of analysis that you want to pursue. I just want to make sure that I am hearing you correctly. You are, Your Honor. And there's one other, I mean, Ms. Scarberry's argument is that under subsection D of the regulation, the fact that we did not include a statement in the record as to Wildcat's financial status means that there's a presumption that Wildcat is financially viable. But our argument against that is that if you read the regulation in subsection D, that conclusion only comes into play if the reasons include the most recent employer's failure to meet the conditions as to the financial ability to pay. That was not one of the reasons that the district director relied on, and therefore the consequence that there's a presumption Wildcat is financially capable of assuming the liability does not come into play. So that's where the, that's where that issue is joined as to the meaning of that subsection. It's 495B, yes, and David. Mr. Doyle, can I just ask you this? I just want to make sure I understand this. Yes. Again, I know you disagree with the Shepard application, but let's say Shepard is applied. When I looked at the ALJ's opinion, there is no reference at all to financial solvency. I understand, I mean, Mr. Austin's right. The monitor is going to get paid. The question is speed a little bit. It's also who pays, right? And I think what Ms. Scarberry is saying is Rhino ought not to pay because your director wrongly applied the rule, and it sounds like I might agree with that in terms of Shepard. But you're now saying we need to say that financial solvency saves the trust fund from having to pay and that Rhino is still on the hook. My problem with that is I see nothing in the record addressing that. And before we can say that Rhino is liable to pay, shouldn't we have something in the record that we can hang our hat on? And particularly when it's the director's responsibility, as I understand it from the regs, to make a certification either that they have insurance or that they're self-insured, referring to Wildcat, where they have the financial ability to pay, and the record is devoid of that. And I'm very nervous about having a coal company having to pay for something when there's nothing in the record that addresses what is the decisive point from your perspective. Right. I disagree with the statement that you made that we had the obligation to put that statement in the record. And I will point to a case that we cited in a brief on page 6, I believe, the Marfolk Coal Company v. Weiss. It's an unpublished decision from this court, but it was a similar circumstance under which the named coal operator was arguing at the administrative level that it shouldn't be on the hook, and when it did not bring the evidence to the attention of the district director. The financial evidence that you're talking about that should be in the record was the obligation, it was RINO's obligation to bring that evidence to the district director when it was before the district director. But how did they do that? I mean, it seems to me, though, that the director, I think Ms. Scarberry's right, that the director has access to Wildcat's financial status, whereas RINO does not. The director has in its files the insurance, the self-insured, and the solvency. RINO doesn't know that about another company, would they? It depends. There are subpoena power. There's availability of discovery to determine those things. But that's something that's in the regulations you're on. That shift of the burden of proof is very clearly set forth in the regulations, that it is the responsibility of the operator to prove the other operator's lack of financial resources. I think Ms. Scarberry disagrees with you on who's got the burden there, but I think my point is not to resolve that, but to say should not the ALJ have decided that, gone through that analysis, to allow us to make the decision on financial solvency before we put RINO on the hook for paying this when there's nothing in the record to do it? I'm sorry, Judge Wilkinson, for going past the time. If I could just comment briefly, Judge Wilkinson. If we send it back to the ALJ, the ALJ is not going to have any evidence about the financial wherewithal, and it's not going to be able to get it. And so the question is, whose obligation was it to bring it to the district director's attention? And I would suggest to you that the Marford Cole case will answer that in our favor. Thank you, Your Honors. Let me ask you, read me the section in the regulation that says that this is RINO's burden. So it's 20 CFR 725.495, subsection C as in Charlie, and this is talking about once the case has moved to the administrative law judge level, the designated responsible operator shall bear the burden of proving, and again, they were the designated responsible operator, so they have the burden of proving either that they did not themselves possess sufficient assets to secure the payment benefits, or that it is not the potentially liable operator that most recently employed the miner, which in this case they would argue Wildcat was, and such proof must include evidence that the miner was employed. I'll go on. In order to establish that a more recent employer is a potentially liable operator, the designated responsible operator must demonstrate that the more recent operator possesses sufficient assets to secure the payment of benefits. So your view is that the regulation, clearly once you've established RINO's potentially liable operator status, your view is that the regulation you just quoted does very clearly put the burden upon RINO to establish that someone else should be on the hook. That's correct, Your Honor. And you rely on the regulation for that. Judge Novak raised an interesting question. Is that an impossible burden for RINO to discharge? I don't believe so. I will point out that this was challenged in the D.C. Circuit when it was first promulgated, the National Mining Association case. The D.C. Circuit upheld the regulation. But I will say no, it's not in any commercial dispute. There can be third-party discovery to figure out the financial wherewithal in other entities. It may be a difficult thing to do, but it's certainly not impossible. All right. Judge Lloyd, do you have any further questions? Judge Novak, do you have any? Thank you, Judge Wilkinson. All right, let's go. Ms. Scarberry has some rebuttal time here, and we'd be pleased to hear from you, Ms. Scarberry. Thank you, Your Honor. One important point I want to make here is that, obviously, RINO Energy's status as a potentially liable operator has been established. However, the analysis does not begin or should not begin with an earlier operator. It should begin with the most recent operator. And the regulations require that the more recent employer who employed the miner for one year or more should be known. In this instance, that's Wildcat Energy. The director now wants to argue in their proposed decision and order and their schedule for the submission of additional evidence, which were early pleadings at the district director level, they only listed as their reason for naming RINO as the lack thereof of meeting one year of employment. It applied the incorrect standard. They at no point argued inability to pay. In fact, before this court is the very first instance in which the district director has argued that RINO Energy cannot establish a Wildcat as the inability to pay. That burden is on the district director. The district director is required by the regulations to specifically and thoroughly explain all of their reasons. The statute specifically says must explain their reason or reasons as to why they have named an earlier operator as opposed to a more recent operator. Here, they only listed year of employment. They did not list inability to pay. If that was in fact a reason, then both of those reasons should have been listed. They also argue that RINO is not a successor operator. If that is a reason, then that should have been listed as well. The district director failed to do their due diligence and meet their burden. And now they want to pass accountability on to the employer, as Judge Novak pointed out. Legal conclusions are de novo reviewed, Your Honor. As Mr. Austin and as Mr. Dole have indicated, I don't think remanding this case back to the administrative law judge is going to resolve any of these issues because these are legal conclusions, Your Honor. A determination of whether Wildcat Energy is a responsible operator is a finding of law. And whether or not they have the ability to pay is a finding of law. But you're not—one thing it seems to me that people are united on is that they don't want another remand. You're not in favor—I know that Mr. Doyle was not in favor of a remand, and you don't want another remand either, do you, Ms. Scarberry? No, Your Honor. I don't think any of us do. I think that's because reopening the record and remanding this case isn't going to resolve these issues. As Mr. Austin pointed out, you're going to get the same result. And that result is that Wildcat Energy is the more recent operator to have employed the miner for one year or more. So, Ms. Scarberry, in your case, we would just reverse for payment of benefits? Your Honor— If we write the accusation, we just reverse for payment of benefits? Your reversal would be the finding that Rhino Energy is the appropriate responsible operator. When you reverse that decision, determining that Rhino is not the most recent operator to have employed the miner, then the case is automatically transferred to the trust fund because they incorrectly named the wrong responsible operator for this case. Again, it's reversed for payment of benefits? Yes. Payment of benefits has not been contested. All of the parties agree that the claimant is entitled to benefits in this particular case. It's just who's going to pay. So the current finding is that Rhino is to pay. If you reverse, it's a trust fund case, Your Honor. Another point I would like to make is that the director also indicated the availability of discovery, placing this burden on the employer. The employer is essentially given 90 days to respond to any findings that the district director has listed in their pleadings. Here, the district director only listed one reason. It didn't list all of the reasons that should have been listed. This is a slippery slope because if the director's argument is given merit, then this creates a very dangerous situation. In future cases, the director would fail to list an inability to pay as a reason because then that would call into question the 495D statement. I see my time is about to end, Your Honor, if I just may briefly conclude. Do you disagree with Mr. Doyle's interpretation of the regulation here as regards to burden? Yes, Your Honor, I do disagree. I believe that the regulation requires the district director to bear that burden. Here, the district director cannot fully carry out their burden. How can that be squared with the language that he read? Your Honor, that's only when the case is transferred to the Office of Administrative Law Judges. When that case is transferred, then the employer or the subsequent operator is required to rebut that presumption. But we've done that. We've done that through the regulations themselves because the regulation specifically has a presumption which says that if the district director didn't do what they were supposed to do, then they're on the hook. And we have relied upon that regulation, which is obviously the framers of the regulations intended for us to do. I see my time has ended. Thank you, Your Honor. We thank you. All right, I will ask that we appreciate all of the counsel in this case and thank you all for your arguments. I will ask the courtroom deputy, and thanks as well to the courtroom deputy, and I will ask her to please adjourn court. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: J. Harvie Wilkinson III, Henry F. Floyd, David J. Novak